**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Baltimore Division)**

| | |
|---|---|
| In re: | |
| MICHAEL D. COHEN, M.D., P.A.,[1] | Case Nos.: 16-22231 (DER) |
| Debtor. | (Chapter 11) |

**CHAPTER 11 PLAN OF REORGANIZATION PROPOSED BY MICHAEL D. COHEN,**
**M.D., P.A., DEBTOR IN POSSESSION**

Dated:  July 31, 2019

**COLE SCHOTZ P.C.**

*/s/ Irving E. Walker*
Irving E. Walker (Bar No. 00179)
300 East Lombard Street, Suite 1450
Baltimore, MD 21202
Telephone: (410) 230-0660
iwalker@coleschotz.com

Attorneys for Michael D. Cohen, M.D., P.A.,
Debtor and Debtor-
in-Possession

---

[1] The last four digits of the tax identification number of the Debtor are 5175.

## TABLE OF CONTENTS

**Page**

ARTICLE I DEFINED TERMS, RULES OF INTERPRETATION  AND COMPUTATION OF TIME.................................................................................1

    A.    Defined Terms ............................................................................. 1

    B.    Rules of Interpretation and Computation of Time.................... 7

ARTICLE II CLASSES OF CLAIMS AND EQUITY INTERESTS ...........................................7

ARTICLE III TREATMENT OF CLAIMS AND EQUITY INTERESTS...................................9

    A.    Unclassified Claims ................................................................... 9

    B.    Classified Claims and Equity Interests ................................... 10

ARTICLE IV MEANS FOR IMPLEMENTATION OF PLAN ............................................14

    A.    Continuation of the Business .................................................. 14

    B.    New Equity Ownership of the Reorganized Debtor ............... 14

    C.    Corporate Actions ................................................................... 14

    D.    Plan Funding ........................................................................... 14

    E.    General Powers ....................................................................... 15

    F.    Corporate Action .................................................................... 15

    G.    Release of Liens ...................................................................... 15

    H.    Debtor's Post-Effective Date Role.......................................... 16

    I.    Binding Effect......................................................................... 16

    J.    Discharge of Claims................................................................ 16

    K.    Comprehensive Settlement of Claims and Controversies....... 16

    L.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes and Securities Act Registration Requirements ........................... 16

    M.    Protection Against Discriminatory Treatment ....................... 17

ARTICLE V TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ..................................................................................................17

    A.    Executory Contracts and Unexpired Leases to Be Rejected................................. 17

    B.    Bar Date for Rejection Claims ................................................................. 18

ARTICLE VI PROVISIONS GOVERNING DISTRIBUTIONS .................................................18

    A.    Delivery of Distributions and Undeliverable or Unclaimed Distributions .......... 18

    B.    Distribution Record Date ......................................................................... 19

    C.    Setoffs ................................................................................................... 20

ARTICLE VII PROCEDURES FOR RESOLVING DISPUTED CLAIMS ...............................20

    A.    Objections to Claims .............................................................................. 20

    B.    No Distribution Pending Allowance ......................................................... 20

    C.    Resolution of Disputed Claims ............................................................... 20

    D.    Estimation ............................................................................................. 20

ARTICLE VIII CONDITIONS PRECEDENT TO THE EFFECTIVE DATE AND CONSUMMATION OF THIS PLAN ..................................................................21

    A.    Bankruptcy Court Approval...................................................................... 21

    B.    M&T Bank Conditions ............................................................................ 21

ARTICLE IX CRAMDOWN ..................................................................................................21

ARTICLE X INJUNCTION AND AUTOMATIC STAY .........................................................22

    A.    Injunction .............................................................................................. 22

    B.    Automatic Stay....................................................................................... 22

ARTICLE XI RETENTION OF JURISDICTION ....................................................................22

ARTICLE XII MISCELLANEOUS PROVISIONS .................................................................23

    A.    Exculpation ........................................................................................... 23

    B.    Modification of this Plan ........................................................................ 24

    C.    Revocation of this Plan .......................................................................... 24

D.      Successors and Assigns.................................................................................... 24

E.      Notices ........................................................................................................... 24

F.      Courts of Competent Jurisdiction .................................................................. 25

G.      Severability ................................................................................................... 25

H.      Governing Law .............................................................................................. 25

I.      Successors and Assigns.................................................................................... 26

55233/0002-15462073v16

## INTRODUCTION

Michael D. Cohen, M.D., P.A., Debtor in Possession, proposes the following Chapter 11 Plan of Reorganization pursuant to Section 1121(a) of Title 11 of the United States Code.

## ARTICLE I
## DEFINED TERMS, RULES OF INTERPRETATION
## AND COMPUTATION OF TIME

**A.    Defined Terms**

As used in this Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

**1.**    "**Administrative Claim**" means a Claim for costs and expenses of administration allowed under Sections 503(b), 503(c), 507(a) or 507(b) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor (such as wages, salaries, commissions for services and payments for inventories, leased equipment and premises); (b) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Sections 330(a) or 331 of the Bankruptcy Code, including Professional Fee Claims; (c) Claims, pursuant to Section 503(b)(9) of the Bankruptcy Code, for the value of goods received by the Debtor in the 20 days immediately prior to the Petition Date and sold to the Debtor in the ordinary course of the Debtor's business; and (d) all U.S. Trustee Fees.

**2.**    "**Administrative Claim Objection Deadline**" means that any objection with respect to any Administrative Claim (other than Professional Fee Claims) shall be filed on or before **sixty (60) days after the Effective Date**, subject to further extension by an order of the Bankruptcy Court.

**3.**    "**Affiliated Companies**" means those closely held entities in which Dr. Cohen and/or Shari Cohen has an interest as set forth in Schedule I attached hereto.

**4.**    "**Allowed . . . Claim**" means an Allowed Claim in the particular Class or category specified.

**5.**    "**Allowed Claim**" means a Claim:

(a)  that (i) has been listed by the Debtor on its Schedules as non-disputed, non-contingent and liquidated, and (ii) is not a Disputed Claim;

(b)  (i) for which a proof of Claim or request for payment of Administrative Claim (or similar request) has been Filed by the applicable Bar Date or otherwise has been deemed timely Filed under applicable law, and (ii) that is not a Disputed Claim;

(c)  that is allowed:  (i) in any Stipulation of Amount and Nature of Claim executed by or on behalf of the Debtor and Claim holder, (ii) in any contract, instrument or other agreement entered into in connection with this Plan and, if prior to the Effective Date, approved by the Bankruptcy Court, (iii) pursuant to a Final Order, or (iv) pursuant to the terms of this Plan, provided it is not the subject of a pending adversary proceeding; or

(d)  that the Debtor determines prior to the Claims Objection Bar Date (i) should not be subject to an objection or to an amendment to the Schedules, and (ii) should be satisfied in accordance with the terms of this Plan on or after the Effective Date.

**6.**  "**Avoidance Actions**" means any and all actions arising under or actionable by the Estate pursuant to Sections 544, 545, 547, 548, 549, 550, and/or 551 of the Bankruptcy Code, and expressly includes such actions against any and all persons and entities listed on the Debtor's Statement of Financial Affairs, Number 3, filed in this Bankruptcy Case.

**7.**  "**Ballot**" means the form distributed to each holder of an impaired Claim entitled to vote on this Plan on which the holder may indicate acceptance or rejection of this Plan or any election for treatment of such Claim under this Plan.

**8.**  "**Bankruptcy Case**" means the above captioned Chapter 11 case of the Debtor currently pending in the Bankruptcy Court.

"**Bankruptcy Code**" means title 11 of the United States Code, 11 U.S.C. §§ 101, *et seq.*, as now in effect or hereafter amended, applicable to the Bankruptcy Case.

**9.**  "**Bankruptcy Court**" means the United States Bankruptcy Court for the District of Maryland, Greenbelt Division, in which the Bankruptcy Case is pending.

**10.**  "**Bankruptcy Rules**" means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, applicable to the Bankruptcy Case.

**11.**  "**Bar Date**" means the applicable bar date by which a proof of Claim or request for payment of Administrative Claim must be or must have been Filed, as established by an order of the Bankruptcy Court, including the Confirmation Order.  The Bar Dates established by the Bankruptcy Court include, but are not necessarily limited to, the following deadlines: (i) July 5, 2016 for all creditors (except for governmental units), and (ii) August 26, 2016 for governmental units.

**12.**  "**Business Day**" means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

**13.**  "**Cash**" means legal tender of the United States of America and equivalents thereof.

55233/0002-15462073v16

14.    "**Causes of Action**" means any and all claims, actions, adversary proceedings (including Avoidance Actions), causes of action, liabilities, obligations, rights, suits, debts, sums of money, damages, judgments and demands whatsoever, whether pending or not pending, known or unknown, whether or not scheduled as an asset of the Debtor, disputed or undisputed, legal or equitable, absolute or contingent, that are already pending or that have accrued or are accruing to the Debtor or its Estate, or that may be pursued derivatively by or on behalf of the Debtor or the Estate.

15.    "**Claim**" means a "claim," as defined in Section 101(5) of the Bankruptcy Code, against the Debtor.

16.    "**Claims Objection Bar Date**" means, for all Claims, other than Administrative Claims and Professional Fee Claims, **within sixty (60) days of the Effective Date** (subject, however, to the right of the Debtor, to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

17.    "**Class**" means a class of Claims or Equity Interests, as described in Article II.

18.    "**Class 5 Pool**" means Cash in the amount equal to the sum of $125,000.00.

19.    "**Collateral**" means any property or interest in property, whether tangible, intangible or otherwise, pledged or granted by any of the Debtor to a creditor as security for an Allowed Secured Claim.

20.    "**Confirmation Date**" means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

21.    "**Confirmation Hearing**" means the hearing held by the Bankruptcy Court on confirmation of this Plan, as such hearing may be continued from time to time.

22.    "**Confirmation Order**" means the order of the Bankruptcy Court confirming this Plan pursuant to Section 1129 of the Bankruptcy Code.

23.    "**Confirmation**" means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

24.    "**Debtor**" means Michael D. Cohen, M.D., P.A.

25.    "**Disallowed**," when used with respect to a Claim, means a Claim that has been disallowed by a Final Order.

26.    "**Disclosure Statement**" means the disclosure statement relating to this Plan, including, without limitation, all exhibits and schedules thereto, as approved by the Bankruptcy Court pursuant to Section 1125 of the Bankruptcy Code, as the same may be amended, modified or supplemented, before or after such approval.

27.    "**Disputed Claim**" means:

(a)    if no proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date, or has otherwise been deemed timely Filed under applicable law, (i) a Claim that is listed on the Debtor's Schedules as disputed, contingent or unliquidated, or (ii) a Claim that is not listed on the Debtor's Schedules;

(b)    if a proof of Claim or request for payment of Administrative Claim has been Filed by the applicable Bar Date or has otherwise been deemed timely Filed under applicable law, a Claim for which an objection, complaint or request for estimation has been Filed by the Debtor, or prior to the Confirmation Date, any other party-in-interest, by the Claims Objection Bar Date, and such objection has not been withdrawn or denied in its entirety by a Final Order; or

(c)    a Claim for which a proof of Claim or request for payment of Administrative Claim is required to be Filed under this Plan, and no such proof of Claim or request for payment of Administrative Claim is timely Filed.

28.    "**Distribution Record Date**" means the date the Bankruptcy Court enters an order approving the Disclosure Statement.

29.    "**Dr. Cohen**" means Michael D. Cohen, M.D., the principal of the Debtor

30.    "**Effective Date**" means a day designated by the Debtor that is a Business Day no earlier than the date on which all conditions to the effectiveness of this Plan set forth in Article VIII have been met or waived; provided, however, that the Effective Date shall be no later than thirty-five (35) days following the later of (i) the Confirmation Date, or (ii) the date on which the Confirmation Order becomes a Final Order.

31.    "**Equity Interests**" means the rights and interests of the holders of the Old Equity interests in the Debtor, any other instruments evidencing an ownership interest in the Debtor and the rights of any entity to purchase or demand the issuance of any of the foregoing, including: (a) redemption, conversion, exchange, voting, participation and dividend rights (including any rights in respect of accrued and unpaid dividends); and (b) stock options and warrants.

32.    "**Estate**" means the Debtor's estate created pursuant to Section 541 of the Bankruptcy Code upon the commencement of the Bankruptcy Case.

33.    "**Exculpation Parties**" means the Debtor, the Debtor's officers and directors, and the Debtor's Professionals.

34.    "**Executory Contract or Unexpired Lease**" means a prepetition contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under Section 365 of the Bankruptcy Code and includes any modifications, amendments, addenda or supplements thereto or restatements thereof.

**35.** "**Final Order**" means an order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing shall have been denied or resulted in no modification of such order.

**36.** "**General Unsecured Claim**" means any Claim that is not a Secured Claim, Administrative Claim, Professional Fee Claim, Priority Tax Claim or Priority Claim.

**37.** "**Impaired**" means any holder of a Claim or Equity Interest whose legal, contractual or equitable rights are altered, modified or changed by the proposed treatment under the Plan.

**38.** "**Insurance Policies**" means all insurance policies maintained by the Debtor that are still in effect as of the Effective Date.

**39.** "**Lien**" means any mortgage, pledge, deed of trust, assessment, security interest, lease, lien, adverse claim, levy, charge or other encumbrance of any kind, including any "lien" as defined in Section 101(37) of the Bankruptcy Code, or a conditional sale contract, title retention contract or other contract to give any of the foregoing.

**40.** "**M&T Bank**" means M&T Bank, the holder of a first priority Lien on the assets of the P.A not subject to a senior lien held by holders of senior Liens.

**41.** "**New Equity**" means the stock of the Reorganized Debtor$. to be issued on the Effective Date to Dr. Cohen.

**42.** "**New Equity Purchase Price**" means the consideration to be paid by Dr. Cohen, either directly or through an entity controlled by him, to obtain the New Equity and ownership interests in the Reorganized Debtor in the amount of $50,000.00 or such other amount as may be determined by the Bankruptcy Court as necessary to meet the requirements for confirmation of the Plan.

**43.** "**Old Equity**" means the stock or similar ownership interests, including options, warrants or rights to acquire or convert any such interests, issued by the Debtor and outstanding immediately prior to the Petition Date.

**44.** "**Petition Date**" means September 12, 2016.

**45.** "**Plan**" means this plan of reorganization and any and all Exhibits and Schedules attached, or to be attached, hereto or referenced herein, as the same may be amended, modified or supplemented, including without limitation, any "Plan Supplement."

55233/0002-15462073v16

46.     "**Plan Notice Party**" means the party set forth in Article XII(F)(1) of this Plan.

47.     "**Priority . . . Claim**" means an unsecured Claim that is entitled to priority in payment pursuant to Section 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

48.     "**Pro Rata**" means, when used in reference to a distribution of property pursuant to Article VI of this Plan to holders of Allowed Claims in a particular Class or other specified group of Claims, a proportionate distribution so that with respect to a particular partially or fully Allowed Claim in such Class or group of Claims, after giving effect to all prior distributions from the Reorganized Debtor, the ratio of (a)(i) the amount of property distributed on account of the Allowed portion of such Claim to (ii) the total amount of the Allowed portion of such Claim, is the same as the ratio of (b)(i) the amount of property distributed on account of all fully or partially Allowed Claims in such Class or group of Claims to (ii) the aggregate total amount of the Allowed portions of all Allowed Claims in such Class or group of Claims.

49.     "**Professional Fee Claim**" means a Claim against the Debtor under Sections 328, 330(a), 331, 503 or 1103 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Bankruptcy Case.

50.     "**Professional(s)**" means any professional employed in the Bankruptcy Case pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses from the Debtor in connection with the Bankruptcy Case pursuant to Section 503(b)(4) of the Bankruptcy Code.

51.     "**Reorganized Debtor**" means Michael D. Cohen, M.D., P.A., as reorganized pursuant to the Plan, on and after the Effective Date.

52.     "**Representatives**" means, with respect to any entity:  successor, predecessor, officer, director, partner, employee, agent, attorney, advisor, investment banker, financial advisor, accountant or other Professional of such entity, and committee of which such entity is a member, in each case in such capacity, serving on or after the Petition Date.

53.     "**Schedules**" means the schedules of assets and liabilities and the statements of financial affairs Filed by the Debtor, as required by Section 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

54.     "**Secured Claim**" means a Claim that is secured by a Lien on property in which the Estate has an interest or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to Sections 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

55.     "**Tax**" means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state or local taxing authority; or (b) any liability for payment of any amounts of the foregoing

types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

56.    "**U.S. Trustee Fees**" means all fees and charges assessed against the Estate by the United States Trustee and due pursuant to Section 1930 of title 28 of the United States Code.

57.    "**United States Trustee**" means the Office of the United States Trustee for the District of Maryland.

## B.    Rules of Interpretation and Computation of Time

### 1.    Rules of Interpretation.

For purposes of this Plan, unless otherwise provided herein: (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural; (b) unless otherwise provided in this Plan, any reference in this Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in this Plan to an existing document or Exhibit Filed or to be Filed means such document or Exhibit, as it may have been or may be amended, modified or supplemented pursuant to this Plan or the Confirmation Order; (d) any reference to an entity as a holder of a Claim or Equity Interest includes that entity's successors, assigns and affiliates; (e) all references in this Plan to Sections, Articles and Exhibits are references to Sections, Articles and Exhibits of or to this Plan; (f) the words "herein," "hereunder" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan; (g) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan; (h) subject to the provisions of any contract, certificates of incorporation, bylaws, similar constituent documents, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.

### 2.    Computation of Time.

In computing any period of time prescribed or allowed by this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE II
## CLASSES OF CLAIMS AND EQUITY INTERESTS

All Claims and Equity Interests, except Administrative Claims (including Professional Fee Claims), and Priority Tax Claims, are placed in the following Classes. In accordance with Section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Article III(A), have not been classified and thus are excluded from the following Classes. A Claim or Equity Interest is classified in a particular Class only to the

55233/0002-15462073v16

extent that the Claim or Equity Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Equity Interest qualifies within the description of such other Classes.

If there is no Allowed Claim in any particular Class, then that Class shall be deemed to be eliminated. Accordingly, the Debtor proposes to classify Claims in the Estate as follows:

**Class 1 (M&T Bank).** The Secured Claims of M&T Bank to the extent secured by a first-priority Lien on the assets owned by the Debtor. To the extent that the amount of the Class 1 Claim exceeds the amount of the Debtor's obligations to M&T Bank, such excess amount shall be a Class 5 Claim.

**Class 2 (Other Secured Creditors).** All other Secured Claims secured by Liens on property owned by the Debtor other than the Class 1 Secured Claims, which consist of the following:

**Class 2A.** The Secured Claim of Bank of America, N.A., to the extent secured by a first-priority Lien on the assets of the Debtor consisting of a Neograft FUE System and NexTech Systems software.

**Class 2B.** The Secured Claim of Bank Midwest, d/b/a OncePlace Capital, to the extent secured by a first-priority Lien on assets of the Debtor consisting of an Xeo Console Laser System (S/N:XP15480).

**Class 2C.** The Secured Claim of Stearns Bank N.A., to the extent secured by a first-priority Lien on assets of the Debtor consisting of certain ophthalmology equipment known as the Zeiss system and related equipment, as described in the Class 2C loan documents.

**Class 2D.** The Secured Claim of Navitas Credit Corp., to the extent secured by a first-priority Lien on assets of the Debtor consisting of certain glass shelves and a rotary mirror, as described in the Class 2D loan documents.

**Class 2E.** The Secured Claim of PNC Bank, N.A., to the extent secured by a Lien on assets of the Debtor. The Debtor believes that the Class 2E Claim is subordinate to the Class 1 Claim and therefore there will be no Allowed Class 2E Claim unless the Bankruptcy Court determines otherwise by a Final Order..

**Class 3 (Priority Non-Tax Claims).** Unsecured Claims against any of the Debtor that are entitled to priority under Section 507(a) of the Bankruptcy Code, other than Administrative Claims and Tax Claims. The Debtor maintains that there will be no Allowed Class 3 Claims.

**Class 4 (Priority Tax Claims).** Tax Claims against any of the Debtor that are entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**Class 5 (General Unsecured Claims).** General Unsecured Claims against the Debtor, including without limitation deficiency claims held by holders of Liens on property owned by the Debtor to the extent the creditor's Allowed Claim exceeds the value of the creditor's Collateral.

**Class 8: (Equity Interest).** Equity Interests in the Debtor as of the Petition Date.

## ARTICLE III
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

A.    **Unclassified Claims**

      1.    **Administrative Claims**

          (a)    **Payment of Administrative Claims**

Except as specified in this Article III(A)(1), and subject to the Bar Date provisions herein, on or as soon as reasonably practicable after the later of (i) **forty-five (45) days after the Effective Date** or (ii) the date on which an Administrative Claim becomes an Allowed Administrative Claim, the holder of such Allowed Administrative Claim shall receive, in full satisfaction, settlement, release, and discharge of such Allowed Administrative Claim, (a) Cash equal to the unpaid portion of the Allowed amount of such Administrative Claim, or (b) such other less favorable treatment, such as payment over time, as to which the Debtor and such holder shall have agreed upon in writing.

          (b)    **U.S. Trustee Fees under 28 U.S.C. § 1930**

All fees payable in the Bankruptcy Case under 28 U.S.C. § 1930, as agreed by the Debtor or as determined by the Bankruptcy Court, will, if not previously paid in full, be paid in Cash on the Effective Date and will continue to be paid by the Reorganized Debtor as required under 28 U.S.C. § 1930 until such time as an order is entered by the Bankruptcy Court closing the Bankruptcy Case.

          (c)    **Ordinary Course Liabilities**

Allowed Administrative Claims based on liabilities incurred by the Reorganized Debtor in the ordinary course of its business after the Effective Date shall be paid by the Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without further action by the holders of such Administrative Claims or further approval by the Bankruptcy Court.

          (d)    **Bar Dates for Administrative Claims**

               i.    **General Bar Date Provisions**

Except as otherwise provided herein or by previous order of the Bankruptcy Court, unless previously Filed, requests for payment of Administrative Claims (other than Professional Fee Claims) must be Filed and served pursuant to the procedures specified in the Confirmation Order and the notice of occurrence of the Effective Date, no later than **thirty (30) days after the Effective Date**.  Holders of such Administrative Claims that are required to File and serve a request for payment of such Administrative Claims and that do not File and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtor or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date.  Any objection that the Debtor or Reorganized

9

Debtor may wish to file with respect to any Administrative Claim (other than Professional Fee Claims) shall be filed on or before **sixty (60) days after the Effective Date**. The Administrative Claim Objection Deadline may be further extended by an order of the Bankruptcy Court. If no objection to the applicable Administrative Claim is filed on or before the Administrative Claim Objection Deadline for such Administrative Claim, such Administrative Claim shall be deemed Allowed as of that date.

ii.    <strong><u>Bar Dates for Certain Administrative Claims</u></strong>

1.    <strong><u>Professional Fee Claims</u></strong>

Professionals or other entities asserting a Professional Fee Claim for services rendered before the Effective Date must, unless previously Filed, File and serve on the Plan Notice Party and such other entities who requested notice pursuant to Bankruptcy Rule 2002, an application for final allowance of such Professional Fee Claim no later than **sixty (60) days after the Effective Date**. Any party in interest may object to a Professional Fee Claim. Any objections to the allowance of a Professional Fee Claim must be Filed and served on the requesting party no later than **twenty-one (21) days** after such Professional Fee Claim is Filed and served.

2.    <strong><u>Ordinary Course Liabilities</u></strong>

Except as otherwise provided in the Confirmation Order, holders of Administrative Claims arising from liabilities incurred by the Reorganized Debtor in the ordinary course of its business after the Effective Date, including U.S. Trustee Fees, shall not be required to File or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Article III(A)(1)(c).

**2.    <u>Priority Tax Claims</u>**

Pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of an Allowed Priority Tax Claim, each holder of an Allowed Priority Tax Claim will receive, in full satisfaction of its unpaid Priority Tax Claim, regular quarterly installment payments in Cash beginning no later than 120 days after the Effective Date, of a total value, as of the Effective Date, equal to the allowed amount of such claim over a period ending not later than five (5) years after the Petition Date with interest at the rate of three percent (3%) annually.

Priority Tax Claim holders, if any, will receive 100% of the amount of their Allowed Claims.

**B.    <u>Classified Claims and Equity Interests</u>**

**1.    <u>Class 1 (Secured Claim of M&T Bank)</u>**. M&T Bank shall have an Allowed Class 1 Claim in the amount of $100,000.00. The Allowed Class 1 Claim shall be paid in full, without interest, in the amount of $100,000.00 (the "<u>Class 1 Payment</u>") on the Effective Date. The M&T Bank loan documents shall continue in effect with respect to the Debtor except as modified by this Plan or as otherwise mutually agreed by M&T Bank and the Debtors, and M&T shall retain a first priority Lien on its Collateral until the Class 1 Payment is received by M&T

10

Bank. As of the Confirmation Date, all events of default under the M&T Bank loan documents shall be deemed to be cured. Upon payment of the Class 1 Payment to M&T Bank, M&T Bank's Class 1 Claim shall be paid in full and any and all liens held by M&T Bank on Collateral owned by the Debtor shall be deemed released and terminated, and the Debtor shall be authorized to file a termination statement with the Maryland State Department of Assessments & Taxation to confirm this. The Class 1 Claim Holder also shall have an Allowed Class 5 Claim for the difference between the Allowed Class 1 Claim amount and the amount owed by the Debtor to M&T Bank as of the Petition Date. The Plan shall not impair or affect M&T Bank's rights with respect to the Affiliated Companies.

**Class 1 is Impaired, and the holder of the Allowed Class 1 Claim is entitled to vote to accept or reject this Plan.**

    2.      **Class 2 (Other. Secured Claims).**

        a.    **Class 2A (Secured Claim of Bank of America, N.A.).** The amount of the Allowed Class 2A Claim shall be the amount of $15,000.00 less any amounts paid by the Debtor after December 1, 2018 prior to the Confirmation Date. The Allowed Class 2A Claim shall be paid in full within two (2) years after the Effective Date, with interest at the non-default rate of interest set forth in the Bank of America, N.A. loan documents, in monthly installments in an amount mutually acceptable to Bank of America, N.A. and the Debtor or, in the absence of such agreement, as approved by the Court at the Confirmation Hearing, with each payment to be made on the twentieth day of each month beginning in the first full month after the Effective Date. The Bank of America, N.A. loan documents shall continue in effect with respect to the Debtor except as modified by this Plan or as otherwise mutually agreed by Bank of America, N.A. and the Debtor, and Bank of America, N.A. shall retain a first priority Lien on its Collateral to the same extent it held such a Lien as of the Petition Date. As of the Confirmation Date, all events of default under the Bank of America, N.A. loan documents shall be deemed to be cured. The Class 2A Claim Holder also shall have an Allowed Class 5 Claim for the difference between the Allowed Class 2A Claim amount and the amount owed by the Debtor to Bank of America, N.A. as of the Petition Date.

**Class 2A is Impaired, and the holder of the Allowed Class 2A Claim is entitled to vote to accept or reject this Plan.**

        b.    **Class 2B (Bank Midwest).** The amount of the Allowed Class 2B Claim shall be the amount of $15,000.00, which the Debtor and Class 2B Claim holder agree reflects the current fair market value of the Class 2B Collateral. The Allowed Class 2B Claim shall be paid in full within two (2) years after the Effective Date, with interest at the non-default rate of interest of 6.932% (the rate set forth in the Bank Midwest loan documents), in equal monthly installments until paid in full, with payments due on the twentieth day of each month beginning with the first full month after the Effective Date. The Bank Midwest loan documents shall continue in effect with respect to the Debtor except as modified by this Plan or as otherwise mutually agreed by Bank

Midwest and the Debtor, and Bank Midwest shall retain a first priority Lien on its Collateral, an Xeo console laser system, to the same extent it held such a Lien as of the Petition Date.  As of the Confirmation Date, all events of default under the Bank Midwest loan documents shall be deemed to be cured. The Class 2B Claim Holder also shall have an Allowed Class 5 Claim for the difference between the Allowed Class 2B Claim amount and the amount owed by the Debtor to Bank Midwest as of the Petition Date.

**Class 2B is Impaired, and the holder of the Allowed Class 2B Claim is entitled to vote to accept or reject this Plan.**

      **c.**  **Class 2C (Stearns Bank N.A.).**  The Debtor believes that the Class 2C creditor holds a first priority Lien on certain ophthalmology equipment, consisting of a Ziess system and related equipment that the Debtor believes has a fair market value of no more than $65,000.00 as of the Confirmation Date. The amount of the Allowed Class 2C Claim shall be the sum of $65,000.00 less payments received by Stearns Bank N.A. on account of its secured claim after the Petition Date and prior to the Effective Date.  The Allowed Class 2C Claim shall be paid in full within three (3) years of the Effective Date, with interest at the non-default rate of interest set forth in the Stearns Bank N.A. loan documents (8.63%), in equal monthly installments to be made on the twentieth day of each month, beginning in the first full month after the Effective Date. The Stearns Bank N.A. loan documents shall continue in effect with respect to the Debtor except as modified by this Plan or as otherwise mutually agreed by Stearns Bank N.A. and the Debtor, and Stearns Bank N.A. shall retain a first priority Lien on its Collateral to the same extent it held such a Lien as of the Petition Date.  As of the Confirmation Date, all events of default under the Stearns Bank N.A. loan documents shall be deemed to be cured.  To the extent the amount owed by the Debtor to the Class 2C Claim holder exceeds the value of its Collateral, such excess shall be a Class 5 Claim.

**Class 2C is Impaired, and the holder of the Allowed Class 2C Claim is entitled to vote to accept or reject this Plan.**

      **d.**  **Class 2D (Navitas Credit Corp.).**  The amount of the Allowed Class 2D Claim shall be the amount of $2,000.00.  The Allowed Class 2A Claim shall be paid in full within ten months after the Effective Date, without interest, in monthly installments of $200.00 until paid in full with the first payment due to be made on the twentieth day of the month following the Effective Date.  The Class 2D finance documents shall continue in effect with respect to the Debtor except as modified by this Plan and Navitas Credit Corp. shall retain a first priority Lien on its Collateral to the same extent it held such a Lien as of the Petition Date.  As of the Confirmation Date, all events of default under the Navitas Credit Corp. finance documents shall be deemed to be cured.

      **e.**  **Class 2E (PNC Bank, N.A.).**  PNC Bank, N.A.'s Secured Claim is believed to be subordinate or junior to the Lien held by M&T Bank, which secures

12

M&T Bank's Claim which substantially exceeds the value of all of the Debtor's assets. Therefore, the Debtor does not believe PNC Bank, N.A. has a Secured Claim and that there shall be no Allowed Class 2E Claim.

**Class 2E is Impaired, and the holder of the Allowed Class 2E Claim, if any, is entitled to vote to accept or reject this Plan.** However, because the Debtor does not believe there is any Class 2E Allowed Claim, PNC Bank, N.A. shall not be entitled to vote as a Class 2E creditor but is entitled to vote as a Class 5 creditor.

3. <u>**Class 3 (Priority Non-Tax Claims).**</u>

The Debtor is not aware of any outstanding Priority Non-Tax claims. To the extent any exist, except to the extent that a holder of an Allowed Class 3 Claim against the Debtor agrees to a different treatment of such Claim, on the later of the Effective Date, or as soon as is reasonably practicable after such Allowed Priority Non-Tax Claim is Allowed, each holder of an Allowed Class 3 Claim shall receive payment of one hundred percent (100%) of the Allowed amount of such Claim after the Allowed Class 1 Claims are paid in full or otherwise treated as provided for under the Plan.

**Class 3 is unimpaired under the Plan. Each holder of an Allowed Class 4 Claim is deemed to accept the Plan and is not entitled to vote to accept or reject the Plan.**

4. <u>**Class 4 (Priority Tax Claims).**</u>

In full and final satisfaction and discharge of each Allowed Class 5 Claim, each holder of an Allowed Class 5 Claim, if any, shall be paid by the Debtor subject to such Claim regular installments of cash having a total value as of the Effective Date, equal to the Allowed Amount of such Allowed Class 5 Claim, over a period of five (5) years following the Petition Date, or in accordance with such other terms on which the particular Debtor subject to such Allowed Class 5 Claim and the holder of the Allowed Class 5 Claim may agree.

**Class 4 is not impaired under the Plan. Each holder of an Allowed Class 4 Claim is deemed to accept the Plan and is not entitled to vote to accept or reject the Plan.**

5. <u>**Class 5 (General Unsecured Claims against the Debtor).**</u> Each holder of an Allowed Class 5 Claim shall be paid its Pro Rata share of the Class 5 Pool. in quarterly installments beginning on the second anniversary date of the Effective Date and continuing for the next seven (7) quarters or until the amount of the Class 5 Pool is fully paid.

**Class 5 is Impaired, and the holder of an Allowed Class 5 Claim is entitled to vote to accept or reject this Plan.**

6. <u>**Class 6 (Equity Interests).**</u>

On the Effective Date, all Class 6 interests will be extinguished or cancelled. The holder of the Class 6 Equity Interest shall receive no distribution under the Plan on account of the Equity Interest.

13

**Class 6 is Impaired under the Plan, and the holders of Allowed Class 6 Equity Interests shall be deemed to vote to accept the Plan, notwithstanding 11 U.S.C. §1126(g) subject to the Court's determination otherwise.**

## ARTICLE IV
## MEANS FOR IMPLEMENTATION OF PLAN

**A.      Continuation of the Business.**

Upon confirmation of this Plan, the Reorganized Debtor will continue its legal existence and the Debtor will be re-vested with title to all property and property rights of its Estate.

The Reorganized Debtor shall be authorized to operate its business and to use, sell, lease or otherwise dispose of all property and assets free of any restrictions contained in the Bankruptcy Code or Bankruptcy Rules, but subject to the provisions of this Plan. On and after the Effective Date, unless expressly provided otherwise in the Plan, the Reorganized Debtor may operate its business and may use, acquire, or dispose of property and compromise or settle any Claims or Causes of Action (including Avoidance Actions) without supervision or approval by the Bankruptcy Court, and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

**B.      New Equity Ownership of the Reorganized Debtor**

On the Effective Date, the Old Equity Interests in the Debtor will be deemed canceled and extinguished. As of the Effective Date, the Reorganized Debtor shall issue new shares representing 100% of the equity interests of the Reorganized Debtor to Dr. Cohen. In consideration for the New Equity, Dr. Cohen will pay to the Reorganized Debtor the New Equity Purchase Price as follows: (i) the sum of $15,000.00 shall be paid in Cash within thirty (30) days after the Effective Date and (2) the balance due for the New Equity Purchase Price shall be paid over a two (2) year period with interest at the rate of five percent (5%) on the unpaid balance due, in equal quarterly installments of principal and interest.

**C.      Corporate Actions.**

On the Effective Date, or as soon thereafter as is practicable, (i) the Debtor's articles of incorporation and bylaws, or if applicable operating agreement, shall be amended as necessary to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with this Plan, and (ii) the Reorganized Debtor shall execute and deliver all documents, instruments and agreements that are necessary to implement this Plan.

**D.      Plan Funding.**

1.      Dr. Cohen will provide funding for the Plan in the form of payment of the New Equity Purchase Price. In addition, other sums necessary to fund the payment due to M&T Bank on account of its Allowed Class 1 Claim will be provided by the Reorganized Debtor. In the event additional funding is required for the Plan, such additional funding will be provided directly or indirectly by Dr. Cohen and Mrs. Cohen, either from loans from relatives or Dr. Cohen's 401k Plan. The specific terms of any such outside funding will be set forth in a Plan Supplement filed no later than ten (10) days prior to the Confirmation Hearing. Any lenders

providing such funding shall be provided a Lien on assets of the Reorganized Debtor, subordinate to all existing Liens held prior to the Effective Date by Class 1 and Class 2 creditors.

2.    The Reorganized Debtor shall make the payments to holders of Allowed Claims in Classes 1, 2, 4, and 5 pursuant to the Plan, as necessary, from revenues of the Reorganized Debtor subsequent to the Confirmation Date.

## E.    General Powers

In furtherance of and consistent with the purpose of the Plan, the Reorganized Debtor shall have the power and authority to (A) hold, manage, sell and distribute assets of the Estate and their own assets as revested in accordance with the Plan, (B) operate after confirmation in the ordinary course of business, (C) directly and derivatively, commence prosecute and resolve, any and all Causes of Action, (D) file, prosecute and resolve objections to Disputed Claims, (E) perform such other functions as are provided in the Plan, and (F) administer the closure of the Bankruptcy Case.  The Reorganized Debtor shall have the right, power and authority to retain and assert all defenses, rights of setoff, recoupment and counterclaims with respect to each of the foregoing.

## F.    Corporate Action

On the Effective Date, all matters provided for under the Plan that would otherwise require approval of the stockholders, directors or comparable governing bodies of the Debtor shall be deemed to have occurred and shall be in effect from and after the Effective Date pursuant to the applicable general corporation law (or other applicable governing law) of the state in which the Debtor is incorporated, without any requirement of further action by the stockholders or directors (or other governing body) of the Debtor.  On the Effective Date, or as soon thereafter as is practicable, (i) the Debtor's articles of incorporation and bylaws, or if applicable, operating agreement, shall be amended as necessary to comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code and otherwise in a manner not inconsistent with the Plan, and (ii) the Debtor shall execute and deliver all documents, instruments and agreements that are necessary to implement the Plan.

## G.    Release of Liens

Except as otherwise specifically provided in or contemplated by the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, (i) each holder of: (a) any purported voluntary secured claim and/or (b) any judgment, personal property or ad valorem tax, warehouse or artisan or similar Lien Claim, in each case regardless of whether such Claim is an Allowed Claim, shall, on or immediately before the Effective Date and regardless of whether such Claim has been scheduled or proof of such Claim has been filed: (y) turn over and release to the Estate any and all property of the Debtor or Estate that secures or purportedly secures such Claim, or such Lien and/or Claim shall automatically, and without further action by the Debtor be deemed released and (z) execute such documents and instruments as the Debtor require to evidence the holder of a Claim's release of such property or Lien, and if such holder refuses to execute appropriate documents or instruments, the Debtor in its discretion, file a copy of the Confirmation Order in the appropriate recording office, which shall serve to release any holder of a Claim's rights in such property; and (ii) on the Effective Date, all right,

15

title and interest in such property shall revert or be transferred to the Debtor's Estate free and clear of all Claims, interests, and Liens of any kind.

## H.    Debtor's Post-Effective Date Role

All rights and obligations of the Debtor under this Plan that exist or continue on or after the Effective Date shall vest in the post-confirmation, Reorganized Debtor, and such rights and obligations shall be exercisable solely by the Reorganized Debtor on and after the Effective Date.

## I.    Binding Effect

Except as otherwise provided in Section 1141(d)(3) of the Bankruptcy Code, on and after the Confirmation Date, the provisions of the Plan shall bind any holder of a Claim against, or Equity Interest in, the Debtor and its successors and assigns whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

## J.    Discharge of Claims

Except to the extent provided otherwise in this Plan, all Claims against the Debtor shall be deemed fully satisfied, discharged, waived and released in exchange for the treatment of such Claims under this Plan, to the fullest extent provided under Section 1141 of the Bankruptcy Code.

## K.    Comprehensive Settlement of Claims and Controversies

Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under this Plan, the provisions of this Plan shall constitute a good faith compromise and settlement of all Claims or controversies relating to the rights that a holder of a Claim or Equity Interest may have with respect to any Allowed Claim or Equity Interest or any distribution to be made pursuant to this Plan on account of any Allowed Claim. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such Claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtor, the Estate and the Debtor's creditors, and is fair, equitable and reasonable.

## L.    Effectuating Documents; Further Transactions; Exemption from Certain Transfer Taxes and Securities Act Registration Requirements

1.    To the fullest extent permitted under Section 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan, or the execution, delivery or recording of an instrument of transfer under the Plan, or the revesting, transfer or sale of any real or other Property of or to the Debtor, the post-confirmation Debtor, shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the

16

payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, mortgage recording tax, intangible tax or similar tax.

2.    To the fullest extent permitted under Section 1145 of the Bankruptcy Code, the issuance of any interests in the Debtor on or around the Effective Date shall be exempt from the registration requirements of Section 5 of the Securities Act and any and all federal, state and local laws requiring the registration or licensing of an issuer, underwriter, broker or dealer in such securities.

**M.    Protection Against Discriminatory Treatment**

Consistent with Section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Reorganized Debtor or deny, revoke, suspend or refuse to renew any license, permit or other similar contract right, solely because the Debtor has been a debtor under Chapter 11, has been insolvent before the Petition Date or during the Bankruptcy Case, or has not paid a debt that is dischargeable in the Bankruptcy Case.

**ARTICLE V**
**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.    Executory Contracts and Unexpired Leases to Be Rejected**

1.    **Rejection and Acceptance of Executory Contracts and Unexpired Leases.**  On the Effective Date, all executory contracts and unexpired leases to which the Debtor is a party, shall be deemed assumed as of the Effective Date, except for an executory contract or unexpired lease that (i) has been assumed, assigned or rejected pursuant to the terms of a Final Order of the Bankruptcy Court prior to the Effective Date, or (ii) is listed in the attached Schedule V(A)(1), as it may be amended, of executory contracts and leases to be rejected as of the Effective Date.  The Debtor shall pay the cure amounts, if any, necessary to assume such contracts and leases over time as agreed to in writing with each respective party, or as reasonably practicable after, the Effective Date.

In addition, all Insurance Policies shall remain in full force and effect unless otherwise validly terminated, and issuers of such Policies of Insurance shall remain responsible for claims in accordance with the terms and provisions of such Insurance Policies.  The Insurance Policies that have expired as of the Confirmation Date (whether entered into prior or subsequent to the Petition Date) are not executory contracts subject to assumption or rejection.  The issuers of Insurance Policies shall be responsible for continuing coverage obligations under such Insurance Policies, regardless of the payment status of any retrospective or other insurance premiums.  To the extent that any Insurance Policy is determined to be an executory contract, this Plan shall constitute a motion to assume the Insurance Policy and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order shall constitute approval of such assumption pursuant to Section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that assumption of the Insurance Policy is in the best interest of the Debtor and its Estate, and all parties in interest in the Chapter 11 case, and otherwise satisfies the provisions of the Bankruptcy Code.

Nothing contained in the Plan shall constitute or be deemed to be a waiver of any cause of action that the Debtor may hold against any Person, including, without limitation, any Issuer under any Insurance Policies of the Debtor.

        2.      **Amendment of the List of Assumed Contracts.**  The Debtor reserves its rights, at any time prior to fifth (5th) day prior to the Confirmation Hearing and on written notice to the affected parties, to amend the list in Schedule V(A)(1) to delete unexpired leases or executory contracts therefrom or to add additional contracts and agreements thereto, and to alter the amounts and terms of cure payments.

## B.    Bar Date for Rejection Claims

If the rejection of an Executory Contract or Unexpired Lease pursuant to this Plan gives rise to a Claim by the other party or parties to such contract or lease, such rejection Claim will be forever barred and will not be enforceable against the Debtor or the Estate, and shall not share in any distributions under the Plan, unless a proof of Claim is Filed and served on the Plan Notice Party **no later than thirty (30) days** after the later of the Effective Date, or the date of entry of an Order rejecting such Executory Contract or Unexpired Lease.

## ARTICLE VI
## PROVISIONS GOVERNING DISTRIBUTIONS

## A.    Delivery of Distributions and Undeliverable or Unclaimed Distributions

        1.      **Effective Date Payments and Transfers by the Debtor**.  After the Effective Date, the Debtor shall pay to holders of Allowed Claims, an amount in Cash in accordance with such amounts and the timing of such payments for such Allowed Claims in accordance with the provisions of the Plan.  The Debtor may make payments before the due dates set forth in the Plan, in the Debtor's sole discretion, without any penalty for prepayment.

        2.      **Distributions of Cash**.  At the option of the Debtor, any Cash payment to be made hereunder may be made by check or wire transfer or as otherwise required or provided in applicable agreements.

        3.      **Delivery of Distributions**.  Subject to Bankruptcy Rule 9010, unless otherwise provided in the Plan, all distributions and other written communications to any holder of an Allowed Claim will be made to the holder of each Allowed Claim at the address of such holder as listed in the Schedules of the Debtor, or if a proof of Claim or Interest is filed, as listed in such proof of Claim or Interest, unless the Debtor have been notified in writing of a change of address.  In the event that any distribution to any holder or any request by the Debtor for a tax identification number is returned as undeliverable, no distribution to such holder will be made unless and until the Debtor have been notified of the then current address of such holder, at which time or as soon as reasonably practicable thereafter, such distribution will be made to such holder without interest; provided, however, that, such undeliverable distributions (or request for tax identification number) will be deemed unclaimed property under Section 347(b) of the Bankruptcy Code and/or undeliverable at the expiration of ninety (90) days after the date of distribution or request by the Debtor for a tax identification number, and the amount of any undeliverable distribution shall irrevocably revert to the Debtor or the Debtor's Estate as may be

applicable, and any Claim in respect of such undeliverable distribution or request for tax identification number shall be discharged and forever barred from assertion against the Debtor, its property or Estate, as the case may be, and the holder of such Claim shall not be entitled to receive any future distributions. The Debtor will have no obligation to attempt to locate any holder of an Allowed Claim other than by reviewing the Schedules, the Debtor's books and records (to the extent available) or the Claims Register (including any proofs of claim filed against the Debtor).

4. **Interim and Final Distributions**. On the Effective Date or as soon as practicable after the Effective Date, the Debtor shall be authorized (but not required) to make interim distributions, unless otherwise set forth under this Plan. The Debtor shall make a final distribution of all net distributable proceeds to creditors entitled to distributions under this Plan only after (i) all Disputed Claims have been finally resolved; and (ii) the fees and expenses of the Professionals have been paid in full (including any fees and expenses reasonably anticipated to be incurred after the final distribution to close or wind up the Debtor, the Estate or the Bankruptcy Case as applicable) in accordance with this Plan.

5. **Withholding and Reporting Requirements**. In connection with the Plan and all instruments issued in connection therewith and distributed thereon, the Debtor shall comply with all applicable withholding and reporting requirements imposed by any federal, state or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements.

6. **Minimum Distributions**. No payment of Cash less than $25 shall be made by the Debtor. Any Assets that are not distributable, undeliverable or unclaimed in accordance with this Article VI shall revert to the Debtor's Estate or the Debtor, as may be applicable.

7. **Transactions on Business Days**. If the Effective Date, or any other date on which a transaction may occur under the Plan, occurs on a day that is not a Business Day, the transactions contemplated by the Plan to occur on such day shall instead occur on the next Business Day but shall be deemed to have been completed as of the required date.

8. **Allocation of Plan Distribution Between Principal and Interest**. All distributions in respect of any Allowed Claim shall be allocated first to the principal amount of such Allowed Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim) other than to the extent allowed by the Bankruptcy Court in accordance with Section 506(b) or as otherwise provided in the Plan, interest shall not accrue on any Claims after the Petition Date or after the Effective Date.

**B.    Distribution Record Date**

Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of any Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the holders of such Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to such transfer has not expired by the Distribution Record Date. The Debtor will have no obligation to recognize the transfer or

sale of any Claim that occurs after the Distribution Record Date and will be entitled for all purposes herein to recognize and make distributions only to those holders who are holders of such Claims as of the close of business on the Distribution Record Date.  Notwithstanding the foregoing, this provision shall not apply to Claims which arise after the Distribution Record Date but before confirmation of the Plan.

**C.** **Setoffs**

Except with respect to claims of the Debtor released pursuant to this Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with this Plan, the Debtor, and/or Reorganized Debtor, as may be applicable, pursuant to Section 553 of the Bankruptcy Code or applicable non-bankruptcy law, may set off against any Allowed Claim and the distributions to be made pursuant to this Plan on account of such Claim (before any distribution is made on account of such Claim) the Claims, rights and Causes of Action of any nature that the Debtor may hold against the holder of such Allowed Claim prior to the Effective Date; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder will constitute a waiver or release of any claims, rights and Causes of Action that the Debtor may possess against such a Claim holder, which are expressly preserved.

**ARTICLE VII**
**PROCEDURES FOR RESOLVING DISPUTED CLAIMS**

**A.** **Objections to Claims**

The Debtor is entitled to object to all Claims.

**B.** **No Distribution Pending Allowance**

Notwithstanding any other provision in the Plan to the contrary, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**C.** **Resolution of Disputed Claims**

Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, following the Effective Date, the Debtor shall have the right to the exclusion of all others (except as to applications for allowances of compensation and reimbursement of expenses under Sections 328(a), 330 and 503 of the Bankruptcy Code) to make and file objections to Claims and shall serve a copy of each objection upon the holder of the Claim to which the objection is made as soon as practicable, **but in no event later than sixty (60) days after the Effective Date** (subject, however, to the right of the Debtor to seek an extension of time to file such objections by seeking such extension with approval from the Bankruptcy Court).

**D.** **Estimation**

The Debtor may at any time request that the Bankruptcy Court estimate any contingent, unliquidated or Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim, and the Bankruptcy Court will retain

55233/0002-15462073v16

jurisdiction to estimate any Claim at any time, including, without limitation, during the pendency of any contested matter, adversary proceeding or appeal relating to any objection to any Claim. In the event that the Bankruptcy Court estimates any contingent, unliquidated or Disputed Claim, the amount so estimated shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor (as the case may be) may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation and resolution procedures are intended to be cumulative and not exclusive of one another. On and after the Confirmation Date, Claims that have been estimated may be compromised, settled, withdrawn or otherwise resolved subsequently, subject, however, to a Final Order of the Bankruptcy Court.

## ARTICLE VIII
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE AND
## CONSUMMATION OF THIS PLAN

The Effective Date shall not occur, and this Plan shall not be consummated, unless and until the following conditions precedent have occurred or are expressly waived:

A.    **Bankruptcy Court Approval**. The Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtor, which shall be a Final Order unless the Debtor waives this condition as required herein.

B.    **M&T Bank Conditions.**

1.    M&T Bank and the Affiliated Companies shall have reached agreement for resolution of M&T Bank's claims against the Affiliated Companies and release of M&T Bank's Liens on the assets of the Affiliated Companies, on terms acceptable to the Affiliated Companies.

2.    Subject to M&T Bank voting as a Class 1 Claim holder and a Class 5 Claim holder to accept the Plan, M&T Bank shall have received confirmation from the Small Business Administration ("SBA"), in a form acceptable to M&T Bank, that M&T Bank's acceptance of the Plan shall not prejudice M&T Bank's rights under the SBA guarantee M&T Bank holds in connection with loans made to the Debtor.

If the conditions to consummation and the occurrence of the Effective Date have not been satisfied or duly waived, the Confirmation Order may be vacated by the Bankruptcy Court upon request by the Debtor. If the Confirmation Order is vacated, the Plan shall be null and void in all respects, and in that event nothing contained in the Plan shall constitute a waiver or release of any Claims against the Debtor.

## ARTICLE IX
## CRAMDOWN

The Debtor requests Confirmation under Section 1129(b) of the Bankruptcy Code with respect to any impaired Class that does not accept or is deemed not to have accepted this Plan pursuant to Section 1126 of the Bankruptcy Code.

55233/0002-15462073v16

# ARTICLE X
# INJUNCTION AND AUTOMATIC STAY

### A.    Injunction

On and after the Confirmation Date, all Persons and Entities who have held, hold, or may hold, Claims against the Debtor  are permanently enjoined from and after the Confirmation Date from (a) commencing or continuing in any manner any action or proceeding (whether directly, indirectly, derivatively, or otherwise) against or affecting the Debtor, the Debtor's Estate, the Reorganized Debtor, and (b) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan or otherwise interfere with the implementation or consummation of the Plan.

### B.    Automatic Stay

Except as provided herein or otherwise determined by order of the Bankruptcy Court, the automatic stay imposed by operation of Section 362 of the Bankruptcy Code shall remain in full force and effect until the earlier of the time the Bankruptcy Case is closed or dismissed.

# ARTICLE XI
# RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction of all matters arising under, arising out of, or related to the Bankruptcy Case and the Plan pursuant to, and for the purposes of, Sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

1.    To hear and determine motions for the assumption, assumption and assignment or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom;

2.    To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date, including, without limitation, any Cause of Action or any proceeding to prosecute a Cause of Action (subject to 28 U.S.C. §§ 157 and 1334);

3.    To ensure that distributions to holders of Allowed Claims are accomplished as provided in the Plan;

4.    To consider Claims or the allowance, classification, priority, compromise, estimation or payment of any Claim;

5.    To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

6.    To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the

22

consummation, implementation or enforcement of the Plan, the Confirmation Order or any other order of the Bankruptcy Court;

7.    To hear and determine any application to modify the Plan in accordance with Section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan, the Disclosure Statement or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

8.    To hear and determine all applications under Sections 328, 330, 331 and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred by Professionals prior to and following the Confirmation Date;

9.    To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing;

10.    To take any action and issue such orders as may be necessary to construe, enforce, implement, execute and consummate the Plan or to maintain the integrity of the Plan following consummation;

11.    To determine such other matters and for such other purposes as may be provided in the Confirmation Order;

12.    To hear and determine matters concerning state, local, and federal taxes in accordance with Sections 346, 505 and 1146 of the Bankruptcy Code

13.    To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code; and

14.    To enter a final decree closing the Bankruptcy Case.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**A.**    **Exculpation**

The Debtor or the Professionals employed by them during the Bankruptcy Case shall not have or incur any liability to any holder of a Claim for any act or omission occurring after the Petition Date in connection with, related to, or arising out of the Chapter 11 case, including, without limitation, negotiations regarding or concerning the Plan, the pursuit of confirmation of the Plan, the consummation of the Plan, or the administration of the Estate or the Plan or the property to be distributed under the Plan, except for willful misconduct or gross negligence, and, in all respects, the Exculpation Parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.    Notwithstanding the foregoing, nothing in the Plan shall constitute a release of the Debtor for any breach under the Plan, or

constitute a waiver of any Cause of Action against an Exculpation Party for any act or omission occurring or arising prior to the Petition Date.

**B.**    **Modification of this Plan**

Subject to the restrictions on modifications set forth in Section 1127 of the Bankruptcy Code, the Debtor reserve the right to alter, amend or modify this Plan before the Effective Date.

**C.**    **Revocation of this Plan**

The Debtor reserve the right to revoke or withdraw this Plan prior to the Effective Date. If the Debtor revoke or withdraw this Plan, or if Confirmation does not occur, then this Plan shall be null and void in all respects, and nothing contained in this Plan shall:  (1) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtor; (2) prejudice in any manner the rights of the Debtor or any other party in interest; or (3) constitute an admission of any sort by the Debtor or any other party in interest.

**D.**    **Successors and Assigns**

The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

**E.**    **Notices**

1.    Except as otherwise set forth in this Plan, all notices, requests or other communications required or permitted to be made in accordance with this Plan shall be in writing and shall be deemed given five (5) Business Days after first-class mailing, one (1) Business Day after sending by overnight courier, or upon receipt of facsimile transmission and addressed to:

Cole Schotz P.C.
Irving E. Walker, Esquire
300 East Lombard Street, Suite 1450
Baltimore, MD 21202.


2.    **Limitation on Notice**

The Debtor shall give the following notice with regard to the following matters, which notice shall be deemed to be good and sufficient notice of such matters with no requirement for any additional or further notice:

(a)    **Notice of Entry of Confirmation Order.**  Notice of the entry of the Confirmation Order shall be sufficient if mailed to all known holders of Claims and Equity Interests (which have not become Disallowed as of the date of mailing).  Such notice shall be mailed by the Debtor within five (5) Business Days of the date that the Confirmation Order becomes a Final Order.

(b)    **Post-Confirmation Date Service.**  From and after the date the Confirmation Order becomes a Final Order, notices of appearances and demands for service of process filed with the Bankruptcy Court prior to such date shall no longer be effective.  No further notices (other than notice of entry of the Confirmation Order) shall be required to be sent to any entities or persons, except for any creditor who files a renewed request for service of pleadings and whose Claim has not been fully satisfied.

(c)    **General Notice To Creditors.**  All notices and requests to creditors of any Class shall be sent to them at the addresses set forth on the proofs of Claim or, if no proof of Claim was filed, to their last known address as reflected in the records of the Debtor.  Any Creditor may designate in writing any other address for purposes of this Section, which designation shall be effective upon receipt by the Debtor before the Effective Date or the Reorganized Debtor after the Effective Date.

## F.    Courts of Competent Jurisdiction

If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising out of the Plan, such abstention, refusal, or failure of jurisdiction shall have no effect upon and shall not control, prohibit, or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## G.    Severability

If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## H.    Governing Law

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit hereto provides otherwise, the rights, duties and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Maryland, without giving effect to the principles of conflicts of law thereof.

I.    **<u>Successors and Assigns</u>**

All the rights, benefits and obligations of any person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such person.

Dated:  July 31, 2019                              Respectfully submitted,

                                                   MICHAEL D. COHEN, M.D., P.A.


                                                   By:    */s/ Michael D. Cohen*
                                                   Name:  Michael D. Cohen, President

26

**<u>SCHEDULE V(a)(1)</u>**

List of Executory Contracts and Unexpired Leases to be Rejected

[None]

## **SCHEDULE I**

**Affiliated Companies**

Clarkview Physicians, LLC

CMG Partners, LLC

Cosmetic Surgi-Center of Maryland, LLC

EVALLA, LLC